## HUBBARD v. COOK et al.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1907.)

### No. 1,364.

1. LANDLORD AND TENANT—LEASE—RIGHT TO CANCELLATION.

A lessor of property by a lease which was recorded and assignable without his consent is not entitled to a cancellation of such lease as against an assignee in good faith because of any transactions between the original parties of which the assignee had no knowledge or notice.

2. PRINCIPAL AND AGENT—SUIT BY PRINCIPAL FOR FRAUD—SUFFICIENCY OF EVIDENCE.

Evidence considered, and held insufficient to entitle a complainant to an accounting from his agents on the ground of their having fraudulently induced him to lease property for less than its fair rental value.

Appeal from the Circuit Court of the United States for the Eastern Division of the Eastern District of Washington.

The appellant, a resident of the state of Ohio, engaged in loaning money and renting real estate, was the owner of a certain building in the city of Spo-

kane. The property was in charge of the firm of Cook & Clarke, real estate agents at Spokane. In 1901 and 1902 it was in the possession of one Camia, an Italian, under a lease which was to expire January 1, 1904; the rental being $150 per month. Camia was running a questionable resort, and was having trouble with the police. The facts in regard to the tenant and the condition of affairs were, in a series of letters, detailed by Cook & Clarke to the appellant. In the fall of 1902 Cook & Clarke recommended the execution of a lease with the appellee Rogers for a term of five years to begin January 1, 1904, at the monthly rental of $150, the tenant to make all repairs. One of the purposes of executing this lease was to get rid of Camia and to put a third party in a position to buy him out. In November, 1902, the appellee Wilson, knowing nothing of the Rogers lease, bought out Camia's stock of goods and his lease, and went into possession. In the spring or summer of 1903 he learned of the existence of the Rogers lease, saw Rogers personally, and undertook to buy the lease. Rogers demanded $1,500 which Wilson deemed exorbitant. Afterwards, through the intervention of Clarke, Rogers assigned the lease to Wilson for $750. Rogers paid Cook & Clarke $100 for this service, but Wilson paid them nothing. The appellant brought the present suit against Cook & Clarke, Rogers, and Wilson to cancel the lease. On February 6, 1906, he filed his second amended bill of complaint, in which he alleged that at the time of the execution of the Rogers lease the monthly rental value of the property was $350; that Cook & Clarke fraudulently represented to him that the rental value was not to exceed $150 per month, and advised him to execute the lease in question; that he relied upon such advice; that there was a secret and fraudulent understanding between Cook & Clarke and Wilson to share the difference between $350 per month and the $150 per month stipulated in the lease. Upon the evidence in the case the court found the equities with the appellees, and decreed the dismissal of the bill.

William T. Stoll, for appellant.

F. T. Post and Post, Avery & Higgins, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

On the trial of the case the overwhelming weight of the testimony was that the rental value of the property at the time of the execution of the Rogers lease was no more than the sum of $150, and the trial court so found. The cancellation of the lease could only be sustained on proof that Wilson was a party to fraud in its procurement. There is no evidence of such fraud in the record. The lease which he purchased from Rogers was a valid instrument of record. It was assignable without the consent of the lessor. Aside from the knowledge that such a lease had been executed, there is no evidence that Wilson had any knowledge or notice of any previous transactions between Hubbard and Rogers or between any of the other parties to the suit. So far as the record shows to the contrary, Wilson was an innocent purchaser for value. These considerations are sufficient, so far as Wilson is concerned, to sustain the decree of the court below upon the issues which were presented upon the pleadings.

But the appellant earnestly insists that there is proof of fraud on the part of Cook & Clarke which renders them liable in equity to account to the appellant, in the fact that on October 14, 1903, Cook & Clarke wrote the appellant to the effect that Rogers was reluctant to proceed with the lease and was not eager for possession, and they were trying to get him to assign his lease to Wilson, and said: "This might be

better than to force Rogers to fulfill his contract if he thinks it no longer for his interest to take possession," and that this was written after the date when they had received a responsible offer from one Atwood of $225 per month, which offer they not only declined to accept, but did not even report to the appellant. Of course this alleged fraud cannot be availed of to cancel a lease theretofore lawfully executed to Rogers and subsequently assigned to Wilson, who had nothing to do, so far as the record shows, with the conduct of Cook & Clarke, and had no knowledge of what they were doing. Nor do we see that the proofs justify the charge that Cook & Clarke acted fraudulently in the matter. There is nothing to show that it was to their advantage to let the premises to Wilson rather than to Atwood. The offer of Atwood was made about a year after the Rogers lease had been executed and placed of record. The Rogers lease was assigned to Wilson on November 17, 1903. The date of Atwood's offer does not clearly appear. Atwood testified that it was in the summer or fall of 1903 or early in the following winter. Taking the statement which is most favorable to the appellant, that of Clarke, that it was made some two or three months before the assignment of the Rogers lease to Wilson, the question arises: What was the duty of Cook & Clarke with reference to that offer? At that time the Rogers lease was outstanding, and it was not known that Rogers would transfer it or agree to its cancellation. Atwood's offer was for a term of three years and contained no offer to make repairs. There is nothing to indicate that he would have been willing to pay Rogers any sum for the transfer of the lease. Wilson, on the other hand, had an inducement to pay Rogers the sum of $750 in the fact that he had bought out the stock, goods, and fixtures of Camia, having paid him therefor, and for the lease and the good will of the business $2,000. His payment to Rogers was equivalent to an addition of $12.50 per month to the monthly rental of the lease. It may be that Cook & Clarke were remiss in their duty in not notifying the appellant of Atwood's offer and giving him the opportunity, if he saw fit to avail himself of it, of making overtures to buy the Rogers lease. But their error, if error they made, is not shown to have been more than an error of judgment nor such a dereliction of duty as should charge them in equity with the payment of money to compensate the appellant for the additional rent which might or might not have resulted from a possible lease to Atwood. It is true that since the execution of the lease rental values have greatly increased, owing to the rapid growth and prosperity of the city of Spokane, and, in the light of subsequent events, it now appears that it would have been better not to have executed the Rogers lease. But it does not follow that it was bad judgment to execute it at the time when it was made. The appellant could judge of the advisability of making the lease as well as could the agents. As the court below said: "It was as much his duty to peer into the future as it was that of his agents." In brief, we find in the record no ground whatever to set aside the lease and no reason sufficient in equity to require Cook & Clarke to account for the difference between the $150 a month stipulated for in the Rogers lease, which also bound the lessee to make all repairs at his own expense, and the $225 per month which Atwood offered to pay, without

assuming the burden of repairs. And especially is this so when we consider that the appellant was powerless to accept the Atwood offer when it was made, even if it had been communicated to him, and that there is no proof whatever that the agents ever received directly or indirectly, any benefit from any of the transactions save and except the sum of $100 paid by Rogers for their services in selling his lease to Wilson.

The decree of the Circuit Court dismissing the bill is affirmed.